**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF
FLORIDA Case No. 1:21-cv-21708**

LORI WHISMAN AND JOANNE ALLEN,
*individually and on behalf of themselves and
others similarly situated*,

            Plaintiffs,                              CLASS ACTION

v.

DESIGNER BRANDS, INC.,

            Defendant.

_____/

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332(d), 1441, and 1446, Defendant Designer Brands, Inc. ("Defendant") hereby provides notice of removal of this action from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, to the United States District Court for the Southern District of Florida. In support of this Notice of Removal, Defendant states as follows:

**I. Threshold Requirements**

1.      On March 27, 2021, Plaintiffs Lori Whisman and Joanne Allen ("Plaintiffs") filed a putative class action complaint against Defendant in the Circuit Court for the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida, captioned *Lori Whisman and Joanne Allen v. Designer Brands, Inc.*, No. 2021-007581-CA-01 (the "State Court Action").

2.      Defendant agreed to waive service of the Complaint and Summons in the State Court Action on April 5, 2021.

3.      This Notice of Removal is timely filed under 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of the date that Defendant was served with the initial pleading.

4.      Pursuant to 28 U.S.C. § 1446(a), all process, pleadings, and orders that have been filed and served in the State Court Action are attached hereto as Exhibit 1.

**II.  Federal Question Jurisdiction Pursuant to 28 U.S.C. § 1331**

5.      Plaintiffs allege claims under the Fair and Accurate Credit Transaction Act ("FACTA"), 15 U.S.C. § 1681 *et seq.*

6.      Because Plaintiffs allege claims arising under the laws of the United States, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

**III. Class Action Fairness Act Jurisdiction Pursuant to 28 U.S.C. § 1332(d)**

7.      Removal is proper under 28 U.S.C. § 1332(d) because the United States District Courts have original jurisdiction over any class action: (i) involving a putative class of 100 or more members; (ii) where at least one member of the plaintiff class is a citizen of a State different from any defendant; and (iii) in which the matter in controversy exceeds (in the aggregate) the sum or value of $5 million, exclusive of interest and costs. *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's provisions should be read broadly.").[1] Here, all three conditions are satisfied.

8.      Based on the allegations concerning the putative class that Plaintiffs seek to represent in the Complaint, Defendant believes the putative class would exceed 5,000 members. Thus, the putative class Plaintiffs seek to represent consists of 100 or more members as required by 28 U.S.C. § 1332(d)(5)(B).

---

[1]      By arguing that this matter is removable under 28 U.S.C. § 1332(d), Defendant does not waive any argument that this matter is improper for class certification and all such arguments are expressly reserved.

9.      According to the allegations in the Complaint, Plaintiffs are, and were at all relevant times, residents and citizens of Florida and South Carolina. (Compl. ¶ 22).

10.     Defendant is an Ohio corporation with its headquarters and principal place of business in Ohio, and consequently is a citizen of Ohio.

11.     Because Plaintiffs are citizens of Florida and South Carolina and Defendant is a citizen of Ohio, at least one member of the class of plaintiffs is a citizen of a State different from the defendant as required by 28 U.S.C. § 1332(d)(2)(A).

12.     Because Defendant is not a citizen of the State in which the action was originally filed, removal is proper under 28 U.S.C. §§ 1332(d)(3)–(4).

13.     For purposes of assessing the amount in controversy, Plaintiffs' allegations are accepted as true. *See, e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (noting it does not matter, for purposes of the amount in controversy, that "the complaint discloses the existence of a valid defense to the claim").

14.     Plaintiffs allege that "[a]s a result of Defendant's willful violations…pursuant to 15 U.S.C. § 1681n," they seek "statutory damages," "punitive damages," "attorneys' fees, litigation expenses and costs of suit," and "such other and further relief as the Court deems proper under the circumstances." (Compl. ¶ 83.)

15.     For willful violations under 15 U.S.C. § 1681n, FACTA provides for actual damages or statutory damages of "not less than $100 and not more than $1,000" per consumer, "such amount of punitive damages as the court may allow," and "the costs of the action together with reasonable attorney's fees as determined by the court."  15 U.S.C. § 1681n(a)(1).

16.     Because FACTA provides for up to $1,000 in statutory damages per consumer, in addition to punitive damages, attorneys fees, and costs, and because Defendant believes the

putative class would exceed 5,000 persons, the amount in controversy exceeds $5,000,000 as required by 28 U.S.C. § 1332(d)(2).

17.     This matter satisfies all requirements of 28 U.S.C. § 1332(d) and is therefore removable under the Class Action Fairness Act of 2005.

### IV. Article III Jurisdiction

18.     The Eleventh Circuit held in *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917 (11th Cir. 2020) that the plaintiff in that case had failed to plead an injury-in-fact sufficient to support Article III jurisdiction over his FACTA claim, which alleged that the defendant had printed the first six and last four digits of his card number on his receipt.  Muransky had "alleged the class's harm, and risk of harm, from those statutory violations in broad terms: 'Plaintiff and the members of the class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct,' and 'Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft.'  No additional details were offered."  *Id.* at 922.  *See also id.* at 934 ("He pleaded nothing about any specific risks from the sequence of numbers included on his receipt, and did not address the issue before the district court at any time.").  In holding that *Muransky* failed to establish standing based on these allegations, the court noted that "we cannot say that no one could ever show standing for a similar procedural violation."  *Id.* at 936.

19.     Here, Plaintiffs' Complaint includes numerous allegations that make this case distinguishable from *Muransky*:

      a.  "Most recently, the United States Supreme Court even ruled that a violation of one's rights alone is enough for standing under federal law.  *See Uzuegbunam v. Preczewski*, 2021 U.S. LEXIS 1372, *16 (Sup. Ct. Mar. 8, 2021)…"  (Compl. ¶ 1.)

b. "As a result of Defendant's unlawful conduct, Plaintiffs and the Class who conducted business with Defendant during the time frame relevant to this action have suffered a violation of their substantive rights under § 1681c(g), an invasion of their privacy, breach of their confidence in the safe handling of their account information, breach of implied bailment, exposure to an elevated risk of identity theft, and were unfairly burdened with the need to keep or destroy the receipt, so as to prevent further disclosure of their sensitive credit or debit card information." (Compl. ¶ 3.)

c. "[D]isclosure of that information on the receipt exposes cardholders to a material risk of identity theft, including card fraud."  (Compl. ¶ 20.)

d. "The risk created by this disclosure is substantial.  For example, at least one study demonstrated that in just six seconds, a thief armed with nothing more than the first six and last four digits of a credit card number – the very information Trader Joe's [*sic*] disclosed on Plaintiff's receipt here – can deduce the missing digits and make a fraudulent purchase online…."  (Compl. ¶ 21.)

e. "Defendant's practice of printing the last four digits of the card number on the receipt along with the first six also enhances a thief's ability to conduct these attacks…."  (Compl. ¶ 22.)

f. "The first six digits of a card also reveal details merchants do not normally print on the receipt that a thief can use to deduce missing account information needed to commit fraud…."  (Compl. ¶ 23.)

g. "Absent Defendant's memorialization of the first six digits of Plaintiffs' cards on their receipts, a thief has no practical way to learn that information…." (Compl. ¶ 25.)

h. "In addition, the receipt provided by Defendant includes the full name of Plaintiff Whisman and additional information related to the VIP customers rewards program, such as Plaintiff Whisman's customer ID number, all of which expose Plaintiff Whisman to a increased risk of identity theft when combined with the ten digits of the debit card account printed on the receipt." (Compl. ¶ 43. *See also* Compl. ¶ 49.)

i. *See also* Compl. ¶¶ 44-46, 50-52, 62 (alleging receipt invaded Plaintiffs' privacy, breached their confidence, and caused them "to take action to safeguard the receipt"); Compl. ¶ 69 (alleging "all Class Members have experienced actual harm").

20. The Supreme Court is also poised to address issues of standing to bring claims under the Fair Credit Reporting Act, of which FACTA is a part, in *TransUnion LLC v. Ramirez*, No. 20-297. The Supreme Court's forthcoming decision may offer further support for Article III jurisdiction over Plaintiffs' claims.

21. In short, this Court has Article III jurisdiction over Plaintiffs' claims.

## V. Venue

22. Venue is proper in the Southern District of Florida because the State Court Action is pending within the jurisdictional confines of this Court. 28 U.S.C. § 1446(a).

23.     Defendant will provide written notice of the filing of this Notice of Removal to Plaintiff and the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

WHEREFORE, Defendant Designer Brands, Inc. hereby removes this civil action to this Court on the bases identified above.

Dated: May 5, 2021                              Respectfully submitted,


                                                *s/Joel Griswold*
                                                Joel Griswold
                                                Florida Bar No.: 1008827
                                                Email: jcgriswold@bakerlaw.com
                                                **BAKER & HOSTETLER LLP**
                                                200 South Orange Avenue, Ste. 2300
                                                Post Office Box 112
                                                Orlando, FL 32801-3432
                                                Telephone:  (407) 649-4088
                                                Facsimile:  (407) 841-0168

                                                **ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this May 5, 2021, the foregoing has been electronically filed with the Clerk of the Court using the CM/ECF system. I further certify that I have caused a true and correct copy of the foregoing document to be served on the following via First Class U.S. Mail and email:

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste 302
Aventura, FL 33180
blusskin@lusskinlaw.com

Keith James Keogh
Keogh Law, Ltd.
55 W. Monroe, Ste. 3390
Chicago, IL 60603
keith@keoghlaw.com

Scott D. Owens
Scott D. Owens, P.A.
2750 N 29th Ave., Ste. 209A
Hollywood, FL 33020
scott@scottdowens.com

*s/ Joel Griswold*
Joel Griswold

# EXHIBIT "A"

**FORM 1.997.   CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I.   **CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>   JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>   COUNTY, FLORIDA

<u>Lori Whisman, Joanne Allen</u>
Plaintiff                                                     Case # _____
                                                             Judge  _____

vs.

<u>Designer Brands, Inc.</u>
 Defendant

II.   **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐  $8,000 or less
☐  $8,001 - $30,000
☐  $30,001- $50,000
☐  $50,001- $75,000
☐  $75,001 - $100,000
☒  over $100,000.00

III.   **TYPE OF CASE**      (If the case fits more than one type of case,   select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☐ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
      ☐ Residential Evictions
      ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.**     **REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☐ Nonmonetary declaratory or injunctive relief;
☒ Punitive

**V.**     **NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

  1

**VI.**     **IS THIS CASE A CLASS ACTION LAWSUIT?**
      ☒ yes
      ☐ no

**VII.**     **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
      ☒ no
      ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.**     **IS JURY TRIAL DEMANDED IN COMPLAINT?**
      ☒ yes
      ☐ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: s/ Scott D Owens          Fla. Bar # 597651
      Attorney or party                 (Bar # if attorney)

Scott D Owens               03/27/2021
  (type or print name)            Date

IN THE CIRCUIT COURT FOR THE
ELEVENTH JUDICIAL CIRCUIT,
IN AND FOR MIAMI-DADE COUNTY,
FLORIDA

LORI WHISMAN AND JOANNE ALLEN,
*individually and on behalf of other similarly
situated individuals*,

        Plaintiffs,                      CLASS REPRESENTATION

    v.                                 JURY TRIAL DEMANDED

DESIGNER BRANDS, INC.,
*an Ohio corporation*,

        Defendant.
_____/

## CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
## FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)

Plaintiffs Lori Whisman and Joanne Allen ("Plaintiffs"), on behalf of themselves and other similarly situated individuals, hereby sue Defendant, Designer Brands, Inc., ("Defendant" or "DSW"), and allege the following upon information and belief, and their own personal knowledge:

### I. INTRODUCTION

1.    The Florida Supreme Court has consistently held that the right to sue for statutory damages is sufficient to confer standing. *See Sosa v. Safeway Premium Fin. Co.*, 73 So. 3d 91, 117 (Fla. 2011) ("A case or controversy exists if a party alleges an actual *or legal injury.*") (emphasis added); *Hutchinson v. Tompkins*, 259 So. 2d 129, 132 (Fla. 1972) ("It is well established in Florida that where the allegations of a complaint show the invasion of a legal right, the plaintiff on the basis thereof may recover at least nominal damages, and a motion to dismiss should be overruled."). Most recently, the United States Supreme Court even ruled that a

violation of one's rights alone is enough for standing under federal law. *See Uzuegbunam v. Preczewski*, 2021 U.S. LEXIS 1372, *16 (Sup. Ct. Mar. 8, 2021) ("The law tolerates no farther inquiry than whether there has been a violation of a right.") (quoting *Webb v. Portland Mfg. Co.*, 29 F. Cas. 506, 508 (No. 17,322) (CC Me. 1838); ("[E]very injury imports a damage," so a plaintiff who proved a legal violation could always obtain some form of damages because he "must of necessity have a means to vindicate and maintain [the right].") (alterations in original) (quoting *Ashby v. White*, 2 Raym. Ld. 938, 953-955, 92 Eng. Rep. 126, 136-137 (K. B. 1703). It is with this legal backdrop that Plaintiffs file the instant claim on behalf of themselves and the putative class.

2.     The matter at bar arises from Defendant's violation of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, ("FCRA").

3.     FACTA is a federal law which requires persons that accept debit cards or credit cards for the transaction of business to truncate certain card number account information on printed receipts provided to consumers.

4.     Despite the clear language of the statute, Defendant knowingly or recklessly failed to comply with FCRA by printing the first six (6) and last four (4) digits of credit and debit card account numbers on point-of-sale transaction receipts.

5.     As a result of Defendant's unlawful conduct, Plaintiffs and the Class who conducted business with Defendant during the time frame relevant to this action have suffered a violation of their substantive rights under § 1681c(g), an invasion of their privacy, breach of their confidence in the safe handling of their account information, breach of implied bailment, exposure to an elevated risk of identity theft, and were unfairly burdened with the need to keep

2

or destroy the receipt, so as to prevent further disclosure of their sensitive credit or debit card information. Accordingly, Plaintiffs and the Class are entitled to an award of statutory damages and other relief as further detailed herein.

## II. JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to Fla. Stat. § 26.012 because the amount for the proposed class action exceeds $15,000.

7.      This Court has personal jurisdiction over Defendant pursuant to Fla. Stat. § 48.193(1)(a)(1) because Defendant conducts business in this State.

## III. PARTIES

8.      Plaintiff Lori Whisman ("Plaintiff Whisman") is a natural person who, at all times relevant to this action, was and is a citizen of the state of Florida, whose domicile is in Miami, Florida.

9.      Plaintiff Joanne Allen ("Plaintiff Allen") is a natural person who, at all times relevant to this action, was and is a citizen of the state of South Carolina, whose domicile is in Columbia, South Carolina.

10.     Defendant, Designer Brands Inc., is an Ohio corporation whose principal address is 810 DSW Drive, Columbus, Ohio 43219, and whose registered agent for service of process is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

11.     Defendant was also previously known as DSW, which is Defendant's flagship retail brand whose retail stores offer footwear, handbags, and other accessories. DSW operates nearly 550 stores in the United States and Canada.[1]

12.     Defendant conducts business in the State of Florida as the principal owner and operator of DSW.

---

[1] Source: https://www.designerbrands.com/ (Last viewed: March 11, 2021)

110995.1

## IV. FACTUAL ALLEGATIONS

### A. Background of FACTA

13.     Identity theft is a serious issue affecting both consumers and businesses. As of 2018, a Harris Poll revealed that nearly 60 million Americans have been affected by identity theft.[2] There were a record high 16.7 million victims of identity fraud in 2017 alone, and account takeovers (when a thief opens a credit card account or other financial account using a victim's name and other stolen information) doubled in 2018 from 2017, causing $$14.7 billion in losses.[3]

14.     The states with the highest per capita rates of reported fraud in 2018 were Florida, Georgia, and Nevada. For reported identity theft, the top states in 2019 were Georgia, Florida, and California.[4]

15.     Congress enacted FACTA to prevent identity theft and related harm. See Pub. L. No. 108-159 (Dec. 4, 2003) ("An Act . . . to prevent identity theft . . . *and for other purposes*.") (emphasis added).

16.     Specifically, FACTA is designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction by prohibiting all merchants from printing the expiration date or more than the last five digits of the consumer's debit or credit card account number on any receipt provided at the point of the sale.

17.     Specifically, FACTA states:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business*

---

[2] Source: https://www.lifelock.com/learn-identity-theft-resources-how-common-is-identity-theft.html (Last viewed: March 11, 2021)

[3] Source: https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (Last viewed: March 11, 2021)

[4] Source: https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2019/consumer_sentinel_network_data_book_2019.pdf (Last viewed: March 11, 2021)

> *shall print more than the last 5 digits of the card number or the*
> *expiration date upon any receipt provided to the cardholder at the*
> *point of the sale or transaction*.

15 U.S.C. § 1681c(g)(1) (the "Receipt Provision").

18. As explained by the FTC, "credit card numbers on sales receipts are a "golden ticket" for fraudsters and identity thieves." https://www.ftc.gov/tips-advice/business-center/guidance/slip-showing-federal-law-requires-all-businesses-truncate.

19. Upon signing FACTA into law, President George W. Bush remarked, "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." *Id.*

20. Likewise, Congress enacted FACTA's prohibition against printing more than the last five digits of credit or debit card numbers on receipts "to prevent criminals from obtaining easy access to such key information" [S. Rep. No. 108-166 at p.3], because disclosure of that information on the receipt exposes cardholders to a material risk of identity theft, including card fraud. Here, Defendant printed ten digits – the first six and last four – of customers' sixteen-digit card numbers on their receipts.

21. The risk created by this disclosure is substantial. For example, at least one study demonstrated that in just six seconds, a thief armed with nothing more than the first six and last four digits of a credit card account number – the very information Trader Joe's disclosed on Plaintiff's receipt here – can deduce the missing digits and make a fraudulent purchase online using a "distributed guessing attack," *i.e.*, systematically attempting multiple online purchases with different number combinations. Computer scientists have demonstrated that even starting with no details at all other than the first six digits [of a card number] a hacker can obtain the

three essential pieces of information to make an online purchase within as little as six seconds. Starting with nothing more than the first six digits of a card number and by automatically and systematically generating different variations of the cards security data and firing it at multiple websites, within seconds hackers are able to get a 'hit' and verify all the necessary security data. Investigators believe this guessing attack method is likely to have been used in the recent Tesco cyberattack which defrauded customers of £2.5m.

22.     Defendant's practice of printing the last four digits of the card number on the receipt along with the first six also enhances a thief's ability to conduct these attacks because the last digit of the card number is a "check digit," *i.e.*, a digit whose value is determined based on the other digits of the card number using a formula called the Luhn algorithm. This significantly limits the number of possible combinations a thief will need to attempt to discover the missing digits.

23.     The first six digits of a card also reveal details merchants do not normally print on the receipt that a thief can use to deduce missing account information needed to commit fraud via "phishing" inquiries, *i.e.*, using the first six digits and information about the cardholder's account learned from it, the thief can call or email the consumer posing as the store or bank and convince the consumer the call is legitimate, to extract more data. *See, e.g.*, *Redman v. RadioShack Corp.*, 768 F.3d 622, 626 (7th Cir. 2014) (data FACTA prohibits merchants from printing on the receipt can "bolster the credibility of a criminal" in "phishing scams"). Account information revealed by the first six digits includes, but is not limited to, the name of the card-issuing institution, the card level (black, platinum, business), and the card industry program (*e.g.* airline or gas card) or merchant program (such as American Airlines AAdvantage Miles, Hilton Honors Points, etc.).

6

As one resource succinctly puts it: "**The BIN/IIN [*i.e.* the first six digits] provides merchants with a lot of other information besides just the issuing entity**."[5]

24.     Disclosing FACTA-prohibited information on the receipt also gives thieves multiple ways to access it. In addition to finding the receipt if discarded or lost, expert testimony to Congress established printing the information where it can be seen risks its capture by "unscrupulous employees" or "shoulder-surfers" (persons standing nearby) who see the receipt.

25.     The only reason Plaintiffs were exposed to these real risks is because Defendant printed the first six and last four digits of their card account numbers on their receipts. Absent Defendant's memorialization of the first six digits of Plaintiffs' cards on their receipts, a thief has no practical way to learn that information because banks issue cards using multiple first-six digit combinations, sometimes hundreds by a single bank, and thus without the receipt a thief cannot determine which first-six-digit combination is on Plaintiffs' cards.

26.     After the enactment of FACTA, Congress provided three (3) years in which to comply with the statute's requirements, mandating full compliance with its provisions no later than December 4, 2006.

27.     The requirement was widely publicized among retailers and the FTC. For example, on March 6, 2003, in response to earlier state legislation enacting similar truncation requirements, then-CEO of Visa USA, Carl Pascarella, explained, "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their credit or debit card numbers. The card's expiration date will be eliminated from receipts altogether . . . The first phase of this new policy goes into effect July 1, 2003 for all new

---

[5] Source: https://chargebacks911.com/bank-identification-numbers/#:~:text=The%20BIN%2FIIN%20provides%20merchants,funds%20will%20be%20transferred%20from (Last viewed: March 11, 2021).

110995.1

terminals."[6] Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

28.     Card-issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date. For example, the publication, "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all."[7]

29.     Accordingly, card processing companies continued to alert their merchant clients, including Defendant, of FACTA's requirements. From a Visa Best Practice Alert issued in 2010:

> *Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.) To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.*

See Exhibit A, Visa Best Practices Alert.

30.     As noted above, the processing companies have required that credit card or debit card expiration dates not be shown since 2003 and still require it. For example, American Express requires:

---

[6] Source: https://www.finextra.com/newsarticle/8206 (Last viewed: March 11, 2021)
[7] Source: http://www.runtogold.com/images/rules_for_visa_merchants.pdf (Last viewed: March 11, 2021).

> *Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "\*," or "#," and not blank spaces or numbers.*

See <u>Exhibit B</u>, American Express Merchant Requirements.

31.    Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> *A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "\*," or "#," that are neither blank spaces nor numeric characters.*

See <u>Exhibit C</u>, MasterCard Acceptance Procedures.

32.    According to data from the Federal Trade Commission's 2019 Consumer Sentinel Network Data Book, Florida with its 177,838 complaints ranks No. 2 for the highest per capita rate of reported fraud and other types of complaints.[8] For identity theft, Florida is ranked No. 2 in the country with a total of 64,842 complaints, with total losses from fraud estimated at $89.6 million dollars.[9]

33.    So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (http://www.annualcreditreport.com) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

---

[8] Source: https://www.ftc.gov/system/files/documents/reports/consumer-sentinel-network-data-book-2019/consumer_sentinel_network_data_book_2019.pdf (Last viewed: March 11, 2021)
[9] *Id.*

110995.1

34.     FACTA clearly prohibits the printing of more than the last five (5) digits of the card number to prevent identity theft. Indeed, Defendant's failure to comply with Section 1681c(g)(1)'s truncation provision constitutes a per se concrete injury. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637-38 (3d Cir. 2017) (recognizing that "'unauthorized disclosures of information' have long been seen as injurious" and rejecting the argument that Spokeo "creat[ed] a requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit") (citations omitted).

35.     In the present case, Defendant makes it easier for identity thieves to defraud consumers by printing point-of-sale transaction receipts that contain the first six (6) digits and last four (4) digits of credit or debit card account numbers.

## B. Defendant's Prior Knowledge of FACTA

36.     Most of Defendant's business peers and competitors currently and diligently ensure their credit card and debit card receipt printing process remains in compliance with FACTA by consistently verifying their card machines and devices comply with the truncation requirement. Defendant could have readily done the same.

37.     In addition to being informed not to print more than the last five (5) digits of credit or debit card account numbers, Defendant was contractually prohibited from doing so. Defendant accepts credit cards and debit cards from all major issuers (i.e. VISA, MasterCard, American Express). As discussed, supra, these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

38.     Moreover, Defendant has been sued in past for violating the Fair Credit Reporting Act ("FCRA") *See Gunther v. DSW Inc.*, No. 15-C-1461, 2016 WL 6537975, at *1 (E.D. Wis. Nov. 3, 2016) (complaint for violation of 15 U.S.C. § 1681b(b)(2)(A)).

110995.1

39.     Defendant had also been sued in the past for improperly storing the financial information of its customers that were misappropriated through a data breach into Defendant's system. *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 685–86 (S.D. Ohio 2006) ("Because of DSW's alleged improper retention and failure to secure this information, on or about March 2005 unauthorized persons obtained access to and acquired the information of approximately 96,000 customers.").

40.     In other words, Defendant is not new to the provisions of the FCRA and the risk of identity theft having been previously sued twice for privacy violations similar to the one at issue in this case.

### C. Plaintiffs' Factual Allegations

41.     On September 4, 2019, Plaintiff Whisman made a purchase using her personal debit card at a store owned and operated by Defendant, located in Miami, Florida.

42.     Plaintiff Whisman was subsequently provided an electronically printed receipt bearing the first six (6) and last four (4) digits of her sixteen-digit debit card account number (for a total of ten (10) digits).

43.     In addition, the receipt provided by Defendant includes the full name of Plaintiff Whisman and additional information related to the VIP customers rewards program, such as Plaintiff Whisman's customer ID number; all of which expose Plaintiff Whisman to an increased risk of identity theft when combined with the ten digits of the debit card account printed on the receipt.

44.     As a direct result of Defendant's printing the first six (6) digits of her debit card account number in addition to the last four (4), Plaintiff Whisman felt compelled to take action to safeguard the receipt.

110995.1

45.     The unlawful printing of Plaintiff Whisman's first six (6) digits of her debit card account number invaded her privacy by disclosing her private financial information to anyone who might come in contact with the receipt.

46.     Defendant's disclosure of the first six (6) digits of Plaintiff Whisman's debit card account number breached her confidence in the proper handling of her sensitive debit card account information.

47.     On September 12, 2019, Plaintiff Joanne Allen made a purchase using her personal debit card at a store owned and operated by Defendant, located in Columbia, South Carolina.

48.     Plaintiff Allen was subsequently provided an electronically printed receipt bearing the first six (6) and last four (4) digits of her sixteen-digit debit card account number (for a total of ten (10) digits).

49.     In addition, the receipt provided by Defendant includes the full name of Plaintiff Allen and additional information related to the VIP customers rewards program, such as Plaintiff Allen's customer ID number, all of which expose Plaintiff Allen to an increased risk of identity theft when combined with the ten digits of the debit card account printed on the receipt.

50.     As a direct result of Defendant's printing the first six (6) digits of her debit card account number in addition to the last four (4), Plaintiff Allen felt compelled to take action to safeguard the receipt.

51.     The unlawful printing of Plaintiff Allen's first six (6) digits of her debit card account number invaded her privacy by disclosing her private financial information to anyone who might come in contact with the receipt.

52.     Defendant's disclosure of the first six (6) digits of Plaintiff Allen's debit card

account number breached her confidence in the proper handling of her sensitive debit card account information.

### D. Defendant's Complained-of Practices

53.     Defendant exercises control of each and every one of the receipt-printing devices in use at retail stores, including, at the DSW locations in Miami, Florida, and Columbia, South Carolina, as referenced herein.

54.     At all times relevant herein, Defendant was acting by and through its subsidiaries, agents, servants and/or employees, each of whom was acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

55.     At all times relevant herein, Defendant's violation of FACTA, as well as that of its subsidiaries, agents, servants and/or employees, was knowing or reckless.

56.     Upon information and belief, Defendant utilizes the same, uniform receipt printing equipment and receipt format at each receipt printing device in use at its retail locations.

57.     For each and every debit and credit card transaction each day, Defendant's store employees could see the system was printing the first six and last four digits of debit and credit card numbers on the transaction receipts they were issuing.

58.     Plaintiffs are informed and believe that Defendant implements, oversees, and maintains control over the same uniform debit and credit card payment processing policies, practices, and procedures for the consumer transactions at issue in this case in its retail locations throughout the United States by, without limitation, negotiating, entering into, and acting pursuant to various contracts and agreements with the electronic payment processing company whose technology Defendant uses to process credit or debit card transactions.

59.     It is Defendant's policy and procedure to provide an electronically printed receipt to individuals at the point-of-sale – i.e., immediately upon receipt of credit or debit card payments.

60.     Plaintiffs are informed and believe that Defendant and/or its point of sale system maintains records of all payment transactions and stores customers' information, including duplicate hard copies and electronic copies of all payment receipts provided to customers and can easily provide records of all electronically printed receipts provided to its patrons during the time frame relevant to this action.

61.     Notwithstanding its extensive, first-hand knowledge of the requirements of FACTA, its contractual obligations to credit card issuers such as Visa and Mastercard, and the dangers imposed upon consumers through its failure to comply, Defendant has issued, during the time frame relevant to this Complaint, thousands of point-of-sale receipts containing more than the last five (5) digits of credit and debit card numbers.

62.     By shirking its FACTA obligations on such a large scale, Defendant systematically violated Plaintiffs' and the other putative Class members' privacy, breached their confidence, mishandled their personal credit and debit card information, and exposed them to a heightened risk of identity theft. Defendant's conduct alleged herein resulted in the disclosure of Plaintiffs' and the Class members' private financial information to persons who might find the receipts in the trash or elsewhere, as well as the Defendant's retail employees who handled the receipts.

63.     Simply put, by printing numerous transaction receipts in violation of this long-standing and well-known federal statute, Defendant has caused – to paraphrase the words of the Honorable Judge Posner (retired) – "an unjustifiably high risk of harm that [wa]s either known or

14

so obvious that it should [have been] known" to Defendant. *Redman v. RadioShack Corp.*, 768 F.3d 622, 627 (7th Cir. 2014) (quoting *Farmer v. Brennan*, 51 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

### V. CLASS REPRESENTATION ALLEGATIONS UNDER RULE 1.22(b)(3)

64.     This action is brought as a Class Action under Florida Rule of Civil Procedure 1.220. Plaintiffs propose the following class, defined as follows, and subject to modification by the Court as required:

> *(i) All persons in the United States who, within the two (2) years prior to the filing of the complaint through the date of the Court's order granting class certification, (ii) engaged in one or more transactions using a debit card or credit card at one or more of Designer Brand Inc.'s retail locations in the United States, (iii) at which time Defendant's point-of-sale system was programmed to generate a printed customer receipt displaying more than the last 5 digits of the credit or debit card account number or the expiration date of the credit or debit card used in connection with such transaction(s).*

65.     Plaintiffs fall within the class definition and are members of the class. Excluded from the class is Defendant and any entity in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiffs' attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

66.     The class is ascertainable. It is defined based on objective criteria. Also, its members can readily be identified based in whole or in part on information within Defendant's possession, custody, or control, as well as from records of the entities that processed the card transactions at issue, and records of the banks that issued the credit/debit cards.

67.     Defendant, throughout each of its locations, prints numerous credit and debit card receipts each day. The class period is two years. Therefore, the class is sufficiently numerous

15

such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court by avoiding a multiplicity of identical suits.

68.     There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant are statutory in nature and common to each and every member of the putative class.

69.     While all Class Members have experienced actual harm as previously explained herein, this suit seeks only statutory damages on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

70.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the class include the following:

a.  Whether, within the two (2) years prior to the filing of this Complaint, Defendant and/or its agents employed a point-of-sale payment system programmed to generate credit or debit card transaction receipts containing more than the last five (5) digits of card number numbers or the expiration date of the card;

b.  Whether Defendant's actions violate FACTA;

c.  Whether Defendant's FACTA violation was committed with knowledge of the law or in reckless disregard of it; and

16

      d.   Whether Defendant is liable for damages, and the extent of statutory damages for each violation.

71.    As persons who made a debit or credit card purchase at one or more of Defendant's many retail locations during the time frame relevant to this action, and were provided a printed receipt containing more than the last five (5) digits of their debit or credit card numbers, Plaintiffs assert claims that are typical of the proposed class.

72.    Plaintiffs will fairly and adequately represent and protect the interests of the class in that Plaintiffs have no interests antagonistic to any member of the class, and have engaged competent class counsel.

73.    Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the Class Members' claims.

74.    A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class Members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal, and the cost and effort needed to prosecute a claim to recover those minimal damages, makes individual litigation infeasible. Conversely, the claims at issue are well-suited for class treatment given the commonality of claims and relative ease of management.

**COUNT I – VIOLATION OF 15 U.S.C. § 1681c(g)**

75.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

76.    15 U.S.C. §1681c(g) states as follows:

> *Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.*

77.     This section applies to any "device that electronically prints receipts" ("Devices") at point of sale or transaction. 15 U.S.C. §1681c(g)(3).

78.     Defendant employs the use of said Devices for point of sale transactions throughout its retail locations.

79.     On or before the date on which this complaint was filed, Plaintiffs and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

80.     At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

81.     Notwithstanding the three-year period to comply with FACTA and its accompanying provisions, nor the subsequent years since FACTA became effective; and having direct knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly or recklessly violated and continues to violate the Receipt Provision.

82.     By printing more than the last five (5) digits of Plaintiffs' credit or debit card numbers on transaction receipts, Defendant caused Plaintiffs and its other customers numerous injuries as described above.

83.     As a result of Defendant's willful violations of the FCRA, Defendant is liable to Plaintiffs and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

* * *

18

110995.1

**WHEREFORE**, Plaintiffs Lori Whisman and Joanne Allen respectfully request that this Court enter judgment in their favor and in that of the class, and against Defendant, as follows:

a)  Granting certification of the Class;

b)  Awarding statutory damages;

c)  Awarding punitive damages;

d)  Awarding attorneys' fees, litigation expenses and costs of suit, and;

e)  Awarding such other and further relief as the Court deems proper under the circumstances.

<b>JURY DEMAND</b>

84.    Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 27, 2021.

**LORI WHISMAN** and **JOANNE ALLEN**,
*individually, and on behalf of other similarly
situated individuals.*

s/ Scott D. Owens
Scott D. Owens, Esq. (FBN 0597651)
Scott D. Owens, P.A.
2750 N. 29th Ave., Suite 209A
Hollywood, FL 33020
Tel: 954-589-0588
Fax: 954-337-0666
Email: scott@scottdowens.com

Keith J. Keogh, Esq. (FBN 126335)
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
Email: Keith@KeoghLaw.com

Bret L. Lusskin, Esq. (FBN 28069)
Bret Lusskin, P.A.

110995.1

20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
Tel: 954-454-5841
Fax: 954-454-5844
Email: blusskin@LusskinLaw.com

110995.1

EXHIBIT A



# Visa Best Practices for Primary Account Number Storage and Truncation

## Introduction

*Due to misinterpretation of Visa dispute processing rules, some acquirers require their merchants to unnecessarily store full Primary Account Numbers (PANs)[1]  for exception processing to resolve disputes. The unnecessary storage of full card PAN information by merchants has led to incidents of data compromise, theft or unintended disclosure during disposal. Additional confusion exists due to inconsistent dispute resolution practices by issuers and acquirers in use across different geographies, leading some merchants to conclude that PAN data must be retained for all transactions.*

*To clarify, Visa **does not** require merchants to store PANs, but **does recommend** that merchants rely on their acquirer / processor to manage this information on the merchants' behalf. Visa also recommends that acquirers / processors evolve their systems to provide merchants with a substitute transaction identifier to reference transaction details (in lieu of using PANs).*

*Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)*

*To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa has developed a list of best practices to be used until any new global rules go into effect.*

---

[1] *A PAN is the 16-digit number embossed, engraved, or imprinted on a payment card.*

## PAN Truncation Best Practice

In addition to required compliance with applicable card data security standards, including the Payment Card Industry Data Security Standard (PCI DSS), and Visa Best Practices for Tokenization of Cardholder Information, Visa strongly recommends that acquirers and merchants follow these best practices:

| Domain | Best Practice |
|---|---|
| Cardholder Receipts | 1. Disguise or suppress all but the last four digits of the PAN, **and** suppress the full expiration date, on the **cardholder's copy** of a transaction receipt created at a point of sale (POS) terminal or an ATM (already required for merchants in the U.S., Europe, and CEMEA; Visa will apply this rule across all regions in the near future to provide global consistency).<br><br>• **Example**: ▉▉▉▉▉▉▉ for the PAN and XXXX for the expiration date. |
| Merchant Receipts | 2. Disguise or suppress the PAN to display a maximum of the first six and last four digits, **and** suppress the full expiration date, on the **merchant's copy** of a transaction receipt created at a POS terminal. **Note**: Many merchants already follow this best practice by truncating the PAN to the last four digits on both the cardholder's and merchant's receipts.<br><br>• **Example**: 412345XXXXXX6789 **or** ▉▉▉▉▉▉▉▉▉ for the PAN and XXXX for the expiration date. |
| Merchant Transaction Data Storage by Acquirers | 3. Acquirers should support their merchants by providing transaction data storage, thereby allowing merchants to retain only disguised or suppressed PANs on the merchant's copy of an electronically generated receipt and in their transaction records (unless the merchant has a business need to retain the full card PAN). |
| Enhanced Acquirer Systems | 4. Acquirers should enhance their systems to provide merchants with substitute transaction identifiers (such as the Visa Transaction Identifier) or software tokens to facilitate retrieval of transaction data stored by the acquirer, in lieu of using the PAN as a reference for individual transactions. |
| Merchant Communications from Acquirers | 5. Acquirers should disguise or suppress all PANs sent to merchants in any communications (e-mail, reports, etc.).<br><br>**Reminder**: PCI DSS already requires a PAN transmitted over a public network to be rendered unreadable by encryption, truncation, or hashing. |

## Conclusion

Due to legacy practices and a misinterpretation by issuers and acquirers of Visa dispute resolution processing rules, many merchants unnecessarily store and/or print full card PANs on cardholder and merchant receipts. Visa rules do not require merchants to store full card PANs after settlement, and do allow merchant receipts with truncated PAN information to be retained for copy retrieval and dispute fulfillment.

Visa encourages 1) merchants to only print truncated PANs on cardholder and merchant receipts; and 2) acquirers to not require merchants to store PANs, and to provide alternate means for merchants to reference individual transactions.  Visa has developed best practices to increase data security without affecting merchants' ability to meet dispute resolution requirements. Acquirers and processors are strongly encouraged to support their merchants in following these best practices.

## Respond With Comments by August 31, 2010

Visa would appreciate stakeholder feedback on these best practices by August 31, 2010. Please submit any comments via e-mail to inforisk@visa.com with "PAN Truncation Best Practices" in the subject line.

## Related Documents

"Visa Best Practices for Data Field Encryption" – October 2009

"Visa Best Practices for Tokenization of Cardholder Information" – July 2010

# EXHIBIT B

# AMERICAN EXPRESS

# Merchant Operating Guide

# United States Region

## October 2020

This guide is intended for use by Merchants that have entered into a legally binding Agreement with a Merchant Services Provider based in the United States Region to accept the American Express® Card.





Contact your Merchant Services Provider for additional information and guidance on processing Card Not Present Charges.

## 4.8  Charge Records

You must create a Charge Record for every Charge. For each Charge submitted electronically, you must create an electronically reproducible Charge Record, that complies with the *Technical Specifications*. See Section 2.5, "Compliance with the Technical Specifications".

The Charge Record (and a copy of the customer's receipt) must disclose your return and/or cancellation policies. See Section 4.11, "Return and Cancellation Policies" for additional information.

If the Cardmember wants to use different Cards for payment of a purchase, you may create a separate Charge Record for each Card used. However, if the Cardmember is using a single Card for payment of a purchase, you must not divide the purchase into more than one Charge, nor create more than one Charge Record.

For all Charge Records, you must:

1. Submit the Charge to your Merchant Services Provider for payment.
2. Retain the original Charge Record (as applicable) and all documents evidencing the Charge, or reproducible records thereof, for twenty-four (24) months. See Chapter 8, "Protecting Cardmember Information" for additional information.
3. Provide a copy of the Charge Record to the Cardmember.

You may be able to create more than one Charge Record if the purchase qualifies for a Delayed Delivery Charge. See Section 4.16, "Delayed Delivery Charges".

For Transit Contactless Transactions, a Charge Record is not required for every Charge. Please refer to Section 12.15.4, "Transit Charge Information" for more information.

Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Cardmembers. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers. Here is an example of a Charge Record with a truncated Card Number.



```
              Rocco's Pizza
           123 Brighton Beach Ave
             1-800-867-5309
           THE NATION'S FINEST
      Emp:        Rg: 1   6:06 PM
    ─────────────────────────────────
    Card Type: AMEX ███████████ XX/XX
    Authorization Code: 592052
    Reference Number: 1002
    Date: 10/2/2015 12:06 PM
    ─────────────────────────────────
    AMOUNT:                    $10.50

    TIP:      _____

    TOTAL:    _____

    Signature _____
        I agree to pay the above total
       according to the card holder agreement

              Chk#  19
```

## 4.9  Processing a Credit

A Credit may occur when a Merchant processes a refund for purchases or payments made on the Card.

Follow these steps to issue a Credit:

1. Create a Credit Record.
2. Compare the last four digits on the Charge Record against the Card presented (when applicable).

This document contains sensitive, confidential and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express.

EXHIBIT C



# Transaction Processing Rules

11 December 2020

### 3.13.2 ATM and Bank Branch Terminal Transaction Receipt Requirements

All of the following information must be included on a Transaction receipt:

1. Identification of the Acquirer (for example, the institution name or logotype).
2. The ATM or Bank Branch Terminal location.
3. The Transaction amount (in a dual currency environment, the Transaction currency must be identified on the receipt; in all other environments, the Transaction currency symbol is recommended).
4. The Transaction time and date.
5. The primary account number (PAN), in compliance with Rule 3.13.3. When an Access Device is presented, the Transaction receipt must display the PAN (in truncated form) for the Account accessed by means of that Contactless Payment Device, which may differ from the PAN on a Card linked to the same Account. If available, the truncated Card PAN may also be displayed for informational purposes.
6. The Transaction type (cash disbursement).
7. The Transaction sequence number.
8. An electronic recording of the magnetic stripe-read or chip-read Card data.
9. For a Chip Transaction, the application label and, at the Acquirer's discretion, the Transaction certificate (in its entirety) and related data.
10. For Merchandise Transactions only, a statement that the Transaction was for the purchase of products or services.

An ATM or Bank Branch Terminal must clearly describe, by receipt, screen information, or both, the action taken by the Issuer in response to a Cardholder's request (approved or rejected).

### 3.13.3 Primary Account Number (PAN) Truncation and Expiration Date Omission

A Transaction receipt generated by an electronic Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

The Corporation strongly recommends that if an electronic POS Terminal generates Merchant copies of Transaction receipts, the Merchant copies should also reflect only the last four digits of the PAN, replacing all preceding digits with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

**NOTE: Modifications to this Rule appear in the "Europe Region" section at the end of this chapter.**

| ☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2021-007581-CA-01 |
| **PLAINTIFF(S)**<br>LORI WHISMAN and JOANNE ALLEN,<br>individually and on behalf of other similarly<br>situated individuals, | **VS.  DEFENDANT(S)**<br>DESIGNER BRANDS, INC.,<br>an Ohio corporation, | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on defendant(s): DESIGNER BRANDS, INC.

c/o Corporation Service Company  (Registered Agent)

1201 Hays Steet

Tallahassee, FL 32301

Each defendant is required to serve written defense to the complaint or petition on Plaintiff's Attorney: Scott D. Owens, Esq.

whose address is: Scott D. Owens, P.A.

2750 N. 29th Ave., Ste. 209A

Hollywood, FL 33020

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies, or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days. When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days.**" after service of this summons on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

| **HARVEY RUVIN**<br>**CLERK of COURTS** | | **DATE** |
|---|---|---|
| | DEPUTY CLERK | |

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1ˢᵗ Avenue, Suite 2400, Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email ADA@jud11.flcourts.org; or via Fax at (305) 349-7355,  at least seven (7) days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than seven (7) days; if you are hearing or voice impaired, call 711."**

Filing # 123937495 E-Filed 03/29/2021 02:32:53 PM

| ☑ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA.<br>☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. | | |
|---|---|---|
| **DIVISION**<br>☑ CIVIL<br>☐ DISTRICTS<br>☐ OTHER | **SUMMONS 20 DAY CORPORATE SERVICE**<br>**(a) GENERAL FORMS** | **CASE NUMBER**<br>2021-007581-CA-01 |
| **PLAINTIFF(S)**<br>LORI WHISMAN and JOANNE ALLEN,<br>individually and on behalf of other similarly<br>situated individuals, | VS.  **DEFENDANT(S)**<br>DESIGNER BRANDS, INC.,<br>an Ohio corporation, | **SERVICE** |

**THE STATE OF FLORIDA:**

To Each Sheriff of the State:

**YOU ARE COMMANDED** to serve this summons and copy of the complaint or petition in this action on
defendant(s): DESIGNER BRANDS, INC.

c/o Corporation Service Company  (Registered Agent)

1201 Hays Steet

Tallahassee, FL 32301

Each defendant is required to serve written defense to the complaint or petition on
Plaintiff's Attorney: Scott D. Owens, Esq.

whose address is: Scott D. Owens, P.A.

2750 N. 29th Ave., Ste. 209A

Hollywood, FL 33020

CLOCK IN

within 20 days " **Except when suit is brought pursuant to s. 768.28, Florida Statutes, if the State of Florida, one of its agencies,**
**or one of its officials or employees sued in his or her official capacity is a defendant, the time to respond shall be 40 days.**
**When suit is brought pursuant to. 768.28, Florida Statutes, the time to respond shall be 30 days."** after service of this summons
on that defendant , exclusive of the day of service, and to file the original of the defenses with the Clerk of this Clerk Court either before
service on Plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for
the relief demanded in the complaint or petition.

| **HARVEY RUVIN**<br>**CLERK of COURTS** | 308760<br>DEPUTY CLERK | **DATE**<br>3/29/2021 |
|---|---|---|

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to
participate in this proceeding, you are entitled, at no cost to you, to the provision of certain
assistance. Please contact Aliean Simpkins, the Eleventh Judicial Circuit Court's ADA
Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Avenue, Suite 2400,
Miami, FL 33128; Telephone (305) 349-7175; TDD (305) 349-7174, Email
ADA@jud11.flcourts.org; or via Fax at (305) 349-7355, at least seven (7) days before your
scheduled court appearance, or immediately upon receiving this notification if the time
before the scheduled appearance is less than seven (7) days; if you are hearing or voice
impaired, call 711."**

| ☒ IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |
| ☐ IN THE COUNTY COURT IN AND FOR MIAMI-DADE COUNTY, FLORIDA. |

| **DIVISION** | **WAIVER OF SERVICE OF PROCESS** | **CASE NUMBER** |
|---|---|---|
| ☒ CIVIL | (c) Forms for Services by Mail. | 2021-007581-CA-01 |
| ☐ DISTRICTS | (2) Waiver of Service of Process. | |
| ☐ OTHER | | |

| **PLAINTIFF(S)** | **VS. DEFENDANT(S)** | **CLOCK IN** |
|---|---|---|
| LORI WHISMAN and JOANNE ALLEN, individually and on behalf of other similarly situated individuals | DESIGNER BRANDS, INC., an Ohio corporation | |

**TO:** Scott D. Owens, Esq., Scott D. Owens, P.A., 2750 N. 29th Ave., Suite 209A, Hollywood, FL 33020

I acknowledge receipt of your request that I waive service of process in the lawsuit of _____WHISMAN et al._____ v. _____DESIGNER BRANDS, INC._____ in the ☒ Circuit ☐ County Court in _Miami-Dade County_. I have also received a copy of the complaint, two copies of this waiver, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service process and an additional copy of the complaint in this lawsuit by not requiring that I, (or the entity on whose behalf I am acting), be served with judicial process in the manner provided by Fla. R. Civ. P.1.070.

If I am not the defendant to whom the notice of lawsuit and waiver of service of process was sent, and my authority to accept service on behalf of such person or entity is as follows: I declare that my relationship to the entity or person to whom the notice was sent and my authority to accept service on behalf of such person or entity is as follows:

(describe relationship to person or entity and authority to accept service) _____Attorney for Defendant_____
_____.

I, (or the entity on whose behalf I am acting), will retain all defense or objections to the lawsuit or to the jurisdiction or venue of the court except for any objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me, (or the party on whose behalf I am acting), if a written response is not served upon you within 45 days from the ~~date I received the notice of lawsuit and~~ request for waiver of service of process.

**DATED ON** _____April 5, 2021_____

_____Joel Griswold_____
Defendant or Defendant's Representative

---

## AMERICANS WITH DISABILITIES ACT OF 1990
## ADA NOTICE

**"If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the Eleventh Judicial Circuit Court's ADA Coordinator, Lawson E. Thomas Courthouse Center, 175 NW 1st Ave., Suite 2702, Miami, FL 33128, Telephone (305) 349-7175; TDD (305) 349-7174, Fax (305) 349-7355 at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711."**